HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR18-294-RSM |
| Plaintiff, | |
| v. | DEFENSE TRIAL BRIEF |
| VOLODIMYR PIGIDA, | |
| Defendant. | |

Volodimyr Pigida, through counsel, respectfully submits the following trial brief to address certain issues that may arise throughout trial.

**I.    THE GOVERNMENT'S ACCUSATIONS AND BACKGROUND FACTS**

In fall of 2012, Mr. Pigida established an internet business called Trend Sound Promoters (TSP). The business was designed to serve as an advertising and networking platform for musicians, artists, and entrepreneurs. The heart of the TSP business model was to create web traffic to the TSP website in order to attract advertisers while creating a strong network of members who would buy, sell, and promote TSP products and services.

Mr. Pigida's vision included developing a network of musicians, artists, and other entrepreneurs, known as Independent Promoter Distributors (IPDs), who could drive traffic to the TSP website and also use the platform as a marketplace for their own products. Since Mr. Pigida himself was a professional musician, he used the TSP platform as a vehicle to distribute his own copyright-protected recordings that were produced by another company he owned called SoundTrack Studios (STS). Since TSP

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

focused on marketing music, its business model eventually included a "mini music store" on the website that would permit musicians to buy and sell digital copies of Mr. Pigida's recordings in addition to recordings produced by other musicians.

For TSP to grow, Mr. Pigida knew that the site needed to generate a significant amount of internet traffic. Instead of paying traditional search engines, Mr. Pigida believed it would be more cost effective to use "independent promoters" to generate web traffic for TSP by routinely visiting the TSP website and by marketing TSP services to their communities. This traffic would attract advertisers and help TSP advance upward in search engine results. Mr. Pigida therefore packaged the right to resell his copyright-protected music with an offer to pay the IPDs to distribute the TSP promotional materials. The payment system for the IPDs would not be the traditional salary or hourly rate. Rather, payments would be more consistent with a commission-style method where they would be paid $0.40 for each promotional email that they sent. The IPDs would also receive 80% of the proceeds from the music, products, or services they sold on the TSP platform. Finally, the IPDs would receive a 10% referral bonus for signing new promoters. All of these terms and conditions were explicitly described in an operating agreement that the promoters had to review and accept before they could purchase a package.

The indictment alleges that TSP functioned as a Ponzi scheme in that the packages were worthless and only served to attract new IPDs to buy more packages. Additionally, the indictment alleges that the promoters were defrauded when the operating agreement contract changed in January of 2014 to increase the sales requirements in order to receive compensation. The defense disputes those allegations and will offer proof that the IPDs were sufficiently informed about each package together with the terms and conditions of their compensation, including the changes that were made in January of 2014. Moreover, TSP was represented by an in-house

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

corporate attorney throughout most of its existence—starting in June of 2013. The corporate lawyer, Annette Mouton, re-drafted the IPD terms and conditions and operating agreement starting in August of 2013. More important, Ms. Mouton drafted the January 2014 changes to the same operating agreement that the government claims resulted in defrauding the IPDs. At all times, these changes were posted on the TSP website for all promoters to review at their convenience and were meant to apply prospectively when a promoter bought a new package after the changes went into effect. Accordingly, TSP was not a Ponzi scheme or any other type of fraudulent business that the government is alleging.

On April 24, 2014, TSP, through counsel, filed for Chapter 11 bankruptcy. The indictment alleges that Mr. Pigida moved real and personal property into trust during the weeks prior to that bankruptcy filing in order to conceal assets. Similarly, the indictment alleges that Mr. Pigida made false statements in furtherance of concealing the property in bankruptcy. As presented in earlier pleadings, the defense will argue that the properties placed into trust were not part of TSP's estate. Instead, those properties were purchased by other entities and therefore would not belong on the bankruptcy work schedules or the Statement of Financial Affairs. Put simply, TSP cannot list assets that it does not own on the bankruptcy forms and schedules. Accordingly, there was no concealment.

At all times throughout the bankruptcy process, Mr. Pigida was represented by counsel. During Chapter 11 bankruptcy, Mr. Pigida retained Larry Feinstein and the TSP corporate lawyer Annette Mouton to serve as bankruptcy counsel. When the bankruptcy proceedings shifted to Chapter 7, Ms. Mouton remained as counsel together with James Ware of the MDK law firm. During Chapter 7, Mr. Feinstein briefly appeared during the Section 341 creditors hearing, but then dropped out of the case as Ms. Mouton and MDK took over the legal representation.

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

At trial, the defense will present evidence of Mr. Pigida's interactions with his lawyers throughout the development of TSP and the bankruptcy process. This evidence will include testimony from Ms. Mouton, the billing records, and various other business and legal records. Overall, the evidence will show that Mr. Pigida never acted with the intent to defraud. Rather, at all times, he was transparent with his lawyers and with the promoters. Mr. Pigida endeavored to make sure that the promoters fully understood everything about the TSP packages before purchasing them.

## II. PRIOR RULINGS OF THE COURT

The Court previously denied Mr. Pigida's motions to sever and to dismiss. Unless instructed otherwise by the Court, Mr. Pigida will renew his severance motion at the conclusion of the government's case, the defense case, and the evidence. *See United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008) (holding that a severance motion must be renewed unless "renewing the motion would have been an unnecessary formality.").

## III. ANTICIPATED LEGAL ISSUES

### A. Nature of the alleged conspiracy

Count one alleges a conspiracy "to commit offenses against the United States, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, mail fraud, in violation of Title 18, United States Code, Section 1341, *and* bankruptcy fraud, in violation of Title 18, United States Code, Section 157." *See* Dkt 1 at 1 (emphasis added). There should be no dispute that Count one is duplicitous. Duplicity is the joining of two or more distinct and separate offenses in a single count. *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other grounds in United States v. Lopez*, 484 F.3d 1186, 1191 (9th Cir. 2007). A duplicitous indictment precludes assurance of juror unanimity, and may prejudice a subsequent double jeopardy defense. *United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976)

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

("One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense."); *see also Ramirez-Martinez*, 273 F.3d at 913.

The remedy for a duplicitous count is as follows:

> [A] defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the Government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed.

*Ramirez-Martinez*, 273 F.3d at 915.

When an indictment charges a single conspiracy to violate multiple statutes, the jury may only convict on that single conspiracy count *if it unanimously finds that the defendant conspired to violate at least one of the statutes. See United States v. Gordon,* 844 F.2d 1397, 1401 (9th Cir. 1988) (concluding that a duplicitous conspiracy count obligates the trial judge to submit special interrogatories to ensure a unanimous verdict). In other words, if the government chooses not to elect one object of the conspiracy (i.e., Wire Fraud, Mail Fraud, or Bankruptcy Fraud), then the Court must submit an instruction that requires the jury to unanimously find at least one of the three objects beyond a reasonable doubt before convicting on Count 1.

**B.    Summaries**

The parties anticipate that summary charts and exhibits will be used in this trial to avoid juror confusion and to present the case in the most efficient manner for the jury. To the extent that the government seeks to offer exhibits that summarize its investigation or conclusion, the government must first make available the underlying data, and establish its independent admissibility. *See* Fed. R. Evid. 1006 (summaries to prove content); *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 7 (1st Cir. 2006) ("Common sense dictates that [Rule 1006's] guaranteed access, designed to give the opponent the ability to check the summary's accuracy and prepare

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

for cross examination . . . must include unequivocal notice of the party's intent to invoke Rule 1006 . . . . Thus, to satisfy the 'made available' requirement, a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be viewed.").

The government cannot circumvent this rule by offering testimony, rather than an exhibit, describing conclusions drawn from hearsay, e.g. bank records, without substantiating those conclusions with the underlying data. *See United States v. Nguyen*, 504 F.3d 561, 572 (5th Cir. 2007) (Summary witnesses may not be used as a substitute for, or a supplement to, closing argument.).

C. **Evidentiary issues**

1. **Hearsay**

One issue that will develop during the trial is the question of whether Mr. Pigida was fully transparent with his lawyers to enable them to provide meaningful advice. The government has provided notice that they intend to offer various statements that Mr. Pigida made to law enforcement and other witnesses as well as during the formal bankruptcy proceedings (including declarations, testimony, depositions, and interrogatories). In order for the Court and the jury to assess whether or not Mr. Pigida made full disclosures to his attorneys, the defense will offer out-of-court statements Mr. Pigida made to the lawyers to prove his transparency with his attorneys. This evidence will be critical for the jury to determine whether Mr. Pigida acted with the intent to defraud or whether, as the defense argues, he acted in good faith.

Additionally, the government alleges that Mr. Pigida concealed certain facts from the bankruptcy court and from promoters. To defend against that charge, Mr. Pigida will need to introduce evidence of his disclosures. For example, the government alleges that Mr. Pigida willfully concealed loans to TSP on the Statement

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

of Financial Affairs (SOFA) during the bankruptcy proceedings. *See* paragraph 60 of the indictment (alleging that Mr. Pigida failed to disclose, among other things, loans on the SOFA). Evidence that Mr. Pigida disclosed the existence of private loans to his attorney would not be offered to prove the truth of the matter asserted (i.e., that TSP actually received loans), but rather offered to prove that Mr. Pigida *made the disclosure* about loans to his attorney during the bankruptcy proceedings prior to Chapter 7 conversion. Similarly, Mr. Pigida's statements describing the nature of the TSP business model would not be offered to prove the truth of the matters asserted (i.e., the specifics or efficacy of the business model), but rather offered to rebut the government's claim that TSP is a Ponzi scheme or that somehow Mr. Pigida concealed material facts from the promoters.

A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3) is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Statements offered to prove knowledge or establish context, rather than to prove the truth of the matter asserted, are not hearsay. *See, e.g.*, *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 408 (1st Cir. 2002) (A statement offered to show declarant's knowledge of facts, not facts stated, is admissible non-hearsay); *see also United States v. Fernandez*, 914 F.3d 1105, 1111–12 (7th Cir. 2019) (error to prevent defense from introducing statements for their effect on listener); and *United States v. Smith*, 816 F.3d 479, 481 (7th Cir. 2016) (Informer's side of taped conversation with accused necessary to place statements in context and not offered for the truth of the matter asserted). Accordingly, Mr. Pigida's statements that are offered to establish context for the TSP business model, to rebut the "Ponzi scheme" allegation, or to prove transparency with the lawyers and with the promoters would not be hearsay. Their admission is essential to protect Mr. Pigida's rights under the Fifth and Sixth Amendments.

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

### 2. Rule of completeness

Mr. Pigida has testified and provided sworn declarations in two separate bankruptcy proceedings. Depending on how evidence of his testimony is edited, Mr. Pigida may seek to introduce other portions of the testimony or declarations to avoid distortion. *See* Fed. R. Evid. 106; *United States v. Collicott,* 92 F.3d 973, 983 (9th Cir. 1996) ("[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible.").

### 3. Impeachment

An "answer that [a witness does] not remember having made a prior statement is as adequate a foundation for impeachment as a flat denial." *United States v. Collicott*, 92 F.3d 973, 981–82 (9th Cir. 1996). *See also United States v. Bullcalf*, 563 F. App'x 535, 536 (9th Cir. 2014) (same). If any government witness either denies having made a statement, or claims to have no recollection of making the statement, the defense must be permitted to impeach the witness by contradiction by offering those statements.

## IV. STIPULATIONS

Mr. Pigida anticipates that the parties will stipulate to authenticity and foundation for most, if not all, of the exhibits offered by each party. However, the parties will reserve other objections, including objections related to hearsay, relevance, and undue prejudice. Counsel notes in advance that the government's proposed exhibits include inadmissible and objectionable bankruptcy filings, including the complaint and motion to convert.

The defense will introduce the recorded depositions of Maksym Bezorudko. Those were taken without objection and with leave of Court. Two exhibits were introduced, without objection, during the deposition. *See* Dkt. 146.

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Finally, in order to streamline the presentation of evidence, the parties have agreed that Mr. Pigida may examine the government's witnesses about matters beyond the scope of their direct examination, rather than recalling the witness in the defense case in chief.

## V.   WITNESS LIST

Mr. Pigida expects that he will present his case primarily through the government's witnesses. In addition to the witnesses on the government's witness list, Mr. Pigida may call:

1. Maksym Bezorudko
2. Kenneth Hines
3. Jeff Rougvie
4. Yuriy Golub
5. Alexander Shuvarikov
6. Daniil Pigida
7. Valeria Ivanova

Mr. Pigida reserves the right to add witnesses to this list. He also may recall any witnesses as may be necessary to complete the impeachment of a later witness.

## VI.   CRIMES OF DISHONESTY

A party may attack a witness's credibility using evidence "for any crime, regardless of the punishment, . . . if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Two of the witnesses identified on the government's witness list have convictions for crimes that involved dishonest acts or false statements. Specifically, David Kaletnik was convicted on October 7, 2009 in Lower Kittias District Court for making a false statement to a public servant, and Yevgeniy Litovchenko was convicted on July 13, 2004 in Wright County, Minnesota

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

for aggravated forgery or counterfeiting money. Each of those offenses necessarily involves a dishonest act or false statement.

As both of those convictions occurred more than ten years ago, Mr. Pigida must demonstrate that the convictions' "probative value, supported by specific facts and circumstances, substantially [outweigh their] prejudicial effect" and Mr. Pigida "gives [the] adverse party written notice of the intent to use [them] so the adverse party has a fair opportunity to contest [their] use." Fed. R. Evid. 609(b). Through this trial memorandum, Mr. Pigida is giving that written notice of his intent to use the convictions at trial and, when he uses them, he will provide certified copies of court records to demonstrate that the probative value of the convictions substantially outweigh any prejudicial effect.

## VII.  JURY INSTRUCTIONS

The defense's proposed jury instructions will be filed under separate cover. Mr. Pigida reserves the right to present other instructions as may be justified in light of the trial evidence. Those may include an advice of counsel instruction. *See* Ninth Circuit Model Instruction 5.10.[1]

DATED this 8th day of November 2022.

Respectfully submitted,

s/ *Jesse Cantor*
Assistant Federal Public Defender

s/ *Gregory Murphy*
Assistant Federal Public Defender

Attorneys for Vladimir Pigida

---

[1] That instruction states, in part, "Unlawful intent has not been proved if the defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith."

DEFENSE TRIAL BRIEF
(*United States v. Pigida*, CR18-294-RSM) - 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**